IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

(Richmond Division)

| | |
|---|---|
| LILIANA CORONA GUTIERREZ,<br>GERMAN CORTEZ HERNANDEZ,<br>OSCAR CORONA VALENCIA,<br>YAIR LORTIA MACEDONIO,<br>and LUIS SANTANA RODRIGUEZ<br><br>Plaintiffs,<br><br>v.<br><br>THE EAST COAST HEMP COMPANY, LLC,<br>and CHRIS SIMPSON,<br><br>Defendants. | Civ. No:    3:21cv599 |

## COMPLAINT

## PRELIMINARY STATEMENT

1. This lawsuit seeks to recover damages incurred by Plaintiffs as a result of Defendants'
violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the
Virginia common laws of contracts, unjust enrichment, and quantum meruit.

2. From March 2020 to July 2020, Defendants offered Plaintiffs, all low-income Mexican
laborers, employment and induced them to come to the United States to work for
Defendants under temporary "H-2A" work visas, with the promise that Defendants would
pay Plaintiffs $12.67 per hour. Pursuant to federal regulation, 20 C.F.R. § 655.122,
Defendants promised to pay transportation expenses to and from the place of employment
and to offer the workers employment for a total number of work hours equal to at least
three-fourths of the workdays of the advertised work period.

1

3. Contrary to Defendants' promises, Plaintiffs were underpaid, were not reimbursed for all of their travel expenses, were wrongfully terminated, and did not receive the three-fourths guarantee that federal law requires.

4. Defendants' conduct violated the FLSA and constituted a breach of contract, quantum meruit, and unjust enrichment under Virginia law.

## JURISDICTION AND VENUE

5. The Court has personal jurisdiction over The East Coast Hemp Company, LLC, ("East Coast Hemp") because (1) it is or was domiciled in Virginia, (2) it transacts or transacted business in Virginia, and (3) as Plaintiffs' joint employer, its acts and omissions in Virginia gave rise to Plaintiffs' claims.

6. The Court has personal jurisdiction over Chris Simpson because, upon information and belief, as Plaintiffs' joint employer, his acts and omissions in Virginia gave rise to Plaintiffs' claims. Further, upon information and belief, Mr. Simpson is or was the owner of East Coast Hemp during the relevant time period and as such transacted substantial business in Virginia. Upon information and belief he was additionally domiciled in King George, Virginia, during the relevant time period, such that venue in this district is proper.

7. This action arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*. Jurisdiction over Plaintiffs' FLSA claims lies in this Court pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b). This Court may exercise supplemental jurisdiction over Plaintiffs' state law claims—Virginia common law breach-of-contract, unjust enrichment, and quantum meruit claims—pursuant to 28 U.S.C. § 1367(a), because they form part of the same case or controversy.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)-(c) because a substantial part of the events or omissions giving rise to the claims at issue occurred in this district, and Defendant East Coast Hemp's principal place of business is in this district.

## PARTIES

9. The Plaintiffs are all citizens of Mexico. Defendants arranged for all of them to come to the United States under "H-2A" temporary work visas. The Plaintiffs then performed work for Defendants under those visas in and around King George, Virginia, during the spring and summer of 2020.

10. East Coast Hemp is or was a Virginia limited liability company with its principal place of business in King George, Virginia.

11. Upon information and belief, Chris Simpson is an adult resident of Alabama.

## FACTS

12. East Coast Hemp operates or operated as a hemp producer and retailer, raising hemp in and around the King George, Virginia, area.

13. East Coast Hemp was organized as a limited liability company in January 2019.

14. Upon information and belief, the gross annual business volume of East Coast Hemp exceeded $500,000 at all times relevant to this action.

15. Upon information and belief, Chris Simpson is or was, and at all relevant times was, a member and the managing owner of East Coast Hemp. Mr. Simpson oversaw the day-to-day operations of East Coast Hemp. Mr. Simpson exercised the power to control Plaintiffs' work schedules and locations, to provide the instruments and materials that Plaintiffs needed to perform the work, and to hire and fire Plaintiffs. Mr. Simpson also oversaw

payroll and, upon information and belief, made decisions about how much to pay Plaintiffs. Mr. Simpson supervised Plaintiffs' work.

### The H-2A Visa Program

16. The H-2A visa program is a nonimmigrant visa program that allows companies to bring workers to the United States to perform agricultural jobs on a temporary basis. *See* 8 U.S.C. § 1188. To use the program, an employer must demonstrate to the U.S. Department of Labor ("DOL") (1) "that there are not sufficient U.S. workers able, willing, and qualified to perform the work" at issue, and (2) that the employment of foreign workers will not adversely affect the wages and working conditions of U.S. workers similarly situated." 20 C.F.R. § 655.103(a).

17. To be able to participate in the program, employers must get certification from DOL. 20 C.F.R. § 655.130. This certification includes a job order, which forms the job contract. 20 C.F.R. § 655.121.

18. As a part of the job order, employers agree to provide numerous worker protections enumerated in 20 CFR § 655.122. *Id.* These protections include "[m]inimum benefits, wages, and working conditions." 20 C.F.R. 655.122(c).

19. Employers must give H-2A workers a copy of the work contract or job order that contains various required terms. *See* 20 C.F.R. § 655.122(q). Employers must also display a DOL poster at the job site that sets out rights and protections for H-2A workers. *See* 20 C.F.R. 655.135(l).

*East Coast Hemp's 2020 H-2A Application*

20. In February 2020, East Coast Hemp filed an H-2A Application for Temporary Employment Certification with DOL, seeking to employ H-2A workers in 2020 (the "2020 H-2A

Application"). The 2020 H-2A Application sought DOL's permission to employ up to ten (10) foreign workers as hemp cultivators and processors from March 30, 2020, until November 30, 2020. As part of its application, East Coast Hemp included a job order that contained the material terms and conditions of the jobs. The 2020 H-2A Application and job order represented to DOL that the jobs entailed forty-nine (49) hours of work per week and a workday of 7:30 AM to 4:30 PM on weekdays, plus six-point-five hours on Saturdays. The application and job order stated that the regular rate of pay would be $12.67 per hour, with checks paid weekly.

21. In February 2020, DOL granted the 2020 H-2A Application.

22. Under 20 C.F.R. § 655.122, by executing the 2020 H-2A Application, Defendants agreed to, among other requirements:

   a. Pay at least the highest of (1) the adverse effect wage rate, (2) the applicable prevailing wage, (3) the agreed-upon collective bargaining rate, or (4) the Federal or State statutory minimum wage.

   b. Comply with applicable federal, state, and local employment laws.

   c. Pay the employee for transportation and daily subsistence to return the employee home if the worker is terminated without cause and does not have immediate subsequent H-2A employment.

   d. Guarantee to offer the worker employment for a total number of work hours equal to at least three-fourths of the workdays of the total period beginning with the first workday after the arrival of the worker at the place of employment or the advertised contractual first date of need, whichever is later, and ending on the expiration date specified in the work contract or in its extensions, if any.

## Defendants' Recruiting and Hiring of Plaintiffs

23. Defendants, either directly or through their agents, recruited Plaintiffs in Mexico to come to work for Defendants in Virginia.

24. Mr. Simpson personally participated in recruiting Mr. Cortez Hernandez, Mr. Corona Valencia, and Mr. Santana Rodriguez and telling them about the terms and conditions of the job.  Mr. Simpson recruited Ms. Corona Gutierrez and Mr. Lortia Macedonio through a third party.

25. Plaintiffs elected to accept employment with East Coast Hemp based on Defendants' promises and representations regarding the nature of the work, the compensation to be paid, and the provision of employer housing.

26. Defendants then required Plaintiffs to obtain passports and to travel to the U.S. consulate in Monterrey, Mexico, to undergo consular processing and get their H-2A visas.

27. Defendants hired a company called másLabor to assist in the process of securing Plaintiffs' H-2A visas from the U.S. consulate.

28. At the time of visa processing, Defendants provided Plaintiffs with a written copy of a work contract.

29. Upon arrival in the United States at the work site, Chris Simpson required Plaintiffs to sign another work contract that was primarily in English. Plaintiffs were not given a copy of this contract.

30. Plaintiffs actually began work on April 19, 2020, instead of March 30, 2020, as stated in the contract.

**Defendants' Violations in General**

31. Plaintiffs were reimbursed by Chris Simpson for approximately half of their inbound travel expenses from their hometown in Mexico to Virginia, totaling up to $200 for each Plaintiff.

32. Each Plaintiff paid another at least $280 in inbound travel expenses that was not reimbursed by Defendants.

33. This caused Plaintiffs' first paycheck to amount to below minimum wage.

34. During their time at East Coast Hemp, and excluding the much-shorter first and last weeks of work, Ms. Corona Gutierrez typically worked an average of sixty-point-thirty-seven (60.37) hours per week, and sometimes more, up to approximately sixty-six (66) hours per week; Mr. Cortez Hernandez typically worked an average of sixty-seven-point-eighty-two (67.82) hours per week, and sometimes more, up to approximately seventy-two-point-twenty-five (72.25) hours per week; Mr. Corona Valencia typically worked an average of sixty-four-point-seventy-three (64.73) hours per week, and sometimes more, up to approximately seventy (70) to hours per week; Mr. Lortia Macedonio typically worked an average of  sixty-three-point-twenty-seven (63.27) hours per week, and sometimes more, up to approximately seventy (70) hours per week; Mr. Santana Rodriguez typically worked an average of sixty-three-point-eleven (63.11) hours per week, and sometimes more, up to approximately seventy-one (71) to hours per week.  Plaintiffs were rarely given a day off, despite Sundays not being workdays in the contract.  On rare occasions, Plaintiffs might have worked a shorter week than their average, but only their first and last weeks were under fifty-four (54) hours.

35. Plaintiffs would typically arrive at the greenhouse at 7:30 AM, sometimes even earlier, and the end time would vary by day.

36. Mr. Corona Valencia, Mr. Lortia Macedonio, and Mr. Santana Rodriguez would take turns working evening shifts in groups spraying the plants.  Mr. Cortez Hernandez would typically drive, and so often worked more evening shifts.  The shifts typically ran for two (2) to four (4) hours per day and occurred three (3) to four (4) days per week.  Mr. Simpson was aware they were doing this work.

37. Defendants did not pay Plaintiffs for all of their hours worked.

38. Defendants typically paid Plaintiffs using personal checks and three times in cash.

39. Defendants did not provide Plaintiffs with pay stubs with every paycheck.

40. Although Plaintiffs sometimes received weekly checks, during most of their work with East Coast Hemp their payments were delayed.

41. In fact, on one occasion, they received two weeks' worth of wages in a single check, despite the contract stating that pay would be weekly.

42. Other times, the checks were typically a few days late.

43. Upon information and belief, Plaintiffs were only paid on time on approximately three (3) occasions.

44. On or about Thursday July 9, 2020, Chris Simpson fired the Plaintiffs. Mr. Simpson was angry and told the Plaintiffs that they were being fired because of a problem with a machine, even though the machine was working normally until Mr. Simpson tried to overload it.

45. Upon information and belief, Mr. Simpson told the Plaintiffs that he "did not want to see them here, go to Mexico."

46. Upon information and belief, Mr. Simpson pushed Mr. Corona Valencia, screamed at the Plaintiffs, and refused to allow them to retrieve personal items from the work site.

47. Defendants later refused to pay the three-fourths guarantee, claiming that the Plaintiffs had quit.

48. On or about Saturday July 11, 2020, Plaintiffs attempted to return to the worksite to discuss their employment with Mr. Simpson, as they did not want to leave, and to retrieve personal items from the worksite. Mr. Simpson told Plaintiffs that they were no longer employees and needed to go back to Mexico. Mr. Simpson did not allow Plaintiffs to retrieve personal items from the worksite.

49. Plaintiffs were not reimbursed at all for their return travel expenses from Virginia to their hometown in Mexico, totaling approximately $455-480 for each Plaintiff.

50. Plaintiffs received a final check from East Coast Hemp of approximately $612 for seven days of work.

51. On or about July 29, 2020, almost three weeks after they fired Plaintiffs, the Defendants through their agent, másLabor, applied to the DOL for a finding of contract impossibility pursuant to 20 C.F.R. § 655.122(o).

52. In their request for a finding of contract impossibility, Defendants, through másLabor, alleged that market demand shifts due to the COVID-19 crisis supported a finding of contract impossibility.

53. On or about the next day, July 30, 2020, DOL granted the Request for Determination of Contract Impossibility.

**Facts Regarding Individual Plaintiffs**

*Liliana Corona Gutierrez*

54. Ms. Liliana Corona Gutierrez was recruited in 2020 in Mexico to work for East Coast Hemp.

55. Ms. Corona Gutierrez was originally promised $12.67 per hour. She was paid $12.72 per hour.

56. Based on that promise, Ms. Corona Gutierrez obtained an H-2A visa, traveled from Mexico to Virginia, and began to work for Defendants.

57. Ms. Corona Gutierrez worked for Defendants in King George, Virginia, under an H-2A visa for approximately three (3) months in 2020.

58. Ms. Corona Gutierrez typically worked between approximately fifty-four (54) and sixty-six (66) hours per week for Defendants, excluding the first and last weeks.

59. Ms. Corona Gutierrez was not paid for all of her hours.

60. Ms. Corona Gutierrez paid approximately $580 for her inbound trip from Mexico to Virginia and for her food and hotels during the journey. Defendants reimbursed Ms. Corona Gutierrez for only $200 of these expenses.

61. Ms. Corona Gutierrez paid $455 U.S. dollars for her outbound trip from Virginia to Mexico and for her food and hotels during the journey. Defendants did not reimburse Ms. Corona Gutierrez for any part of these expenses.

62. Chris Simpson and East Coast Hemp's failure to pay wages to Ms. Corona Gutierrez that they were legally and contractually obligated to pay and their failure to abide by H-2A regulations caused Ms. Corona Gutierrez monetary injury.

*German Cortez Hernandez*

63. Mr. German Cortez Hernandez was recruited in 2020 in Mexico to work for East Coast Hemp by Chris Simpson.

64. Mr. Simpson originally promised Mr. Cortez Hernandez $12.67 per hour. He was paid $12.72 per hour.

65. Based on that promise, Mr. Cortez Hernandez obtained an H-2A visa, traveled from Mexico to Virginia, and began to work for Defendants.

66. Mr. Cortez Hernandez worked for Defendants in King George, Virginia, under an H-2A visa for approximately three (3) months in 2020.

67. Mr. Cortez Hernandez typically worked between approximately fifty-four (54) and seventy-two-point-twenty-five (72.25), excluding the first and last weeks.  Mr. Cortez Hernandez would work in the evenings spraying and would also act as the driver.

68. Mr. Cortez Hernandez was not paid for all of his hours.

69. Mr. Cortez Hernandez paid approximately $580 for his inbound trip from Mexico to Virginia and for his food and hotels during the journey. Defendants reimbursed Mr. Cortez Hernandez for only $200 of these expenses.

70. Mr. Cortez Hernandez paid $480 for his outbound trip from Virginia to Mexico and for his food and hotels during the journey. Defendants did not reimburse Mr. Cortez Hernandez for any part of these expenses.

71. Chris Simpson and East Coast Hemp's failure to pay wages to Mr. Cortez Hernandez that they were legally and contractually obligated to pay and their failure to abide by H-2A regulations caused Mr. Cortez Hernandez monetary injury.

*Oscar Corona Valencia*

72. Mr. Oscar Corona Valencia was recruited in 2020 in Mexico to work for East Coast Hemp by Chris Simpson.

73. Mr. Simpson originally promised Mr. Corona Valencia $12.67 per hour. He was paid $12.72 per hour.

74. Based on that promise, Mr. Corona Valencia obtained an H-2A visa, traveled from Mexico to Virginia, and began to work for Defendants.

75. Mr. Corona Valencia worked for Defendants in King George, Virginia under an H-2A visa for approximately three (3) months in 2020.

76. Mr. Corona Valencia typically worked between approximately fifty-four (54) and seventy (70) to hours per week, excluding the first and last weeks.  Mr. Corona Valencia would return in the evenings to spray.

77. Mr. Corona Valencia was not paid for all of his hours.

78. Mr. Corona Valencia paid approximately $580 for his inbound trip from Mexico to Virginia and for his food and hotels during the journey. Defendants reimbursed Mr. Corona Valencia for only $200 of these expenses.

79. Mr. Corona Valencia paid $465.42 for his outbound trip from Virginia to Mexico and for his food and hotels during the journey. Defendants did not reimburse Mr. Corona Valencia for any part of these expenses.

80. When Mr. Simpson fired the workers on July 9, 2020, he pushed Mr. Corona Valencia.

81. Chris Simpson and East Coast Hemp's failure to pay wages to Mr. Corona Valencia that they were legally and contractually obligated to pay and their failure to abide by H-2A regulations caused Mr. Corona Valencia monetary injury.

*Yair Lortia Macedonio*

82. Mr. Yair Lortia Macedonio was recruited in 2020 in Mexico to work for East Coast Hemp.

83.  Mr. Lortia Macedonio was originally promised $12.67 per hour. He was paid $12.72 per hour.

84. Based on that promise, Mr. Lortia Macedonio obtained an H-2A visa, traveled from Mexico to Virginia, and began to work for Defendants.

85. Mr. Lortia Macedonio worked for Defendants in King George, Virginia, under an H-2A visa for approximately three (3) months in 2020.

86. Mr. Lortia Macedonio typically worked between approximately fifty-four (54) and seventy (70) to hours per week, excluding the first and last weeks.  Mr. Lortia Macedonio would return to spray in the evenings.

87. Mr. Lortia Macedonio was not paid for all of his hours.

88. Mr. Lortia Macedonio paid approximately $580 for his inbound trip from Mexico to Virginia and for his food and hotels during the journey. Defendants reimbursed Mr. Lortia Macedonio for only $200 of these expenses.

89. Mr. Lortia Macedonio paid $460 U.S. dollars and 300 Mexican pesos for his outbound trip from Virginia to Mexico and for his food and hotels during the journey. Defendants did not reimburse Mr. Lortia Macedonio for any part of these expenses.

*90.* Chris Simpson and East Coast Hemp's failure to pay wages to Mr. Lortia Macedonio that they were legally and contractually obligated to pay and their failure to abide by H-2A regulations caused Mr. Lortia Macedonio monetary injury.

*Luis Armando Santana Rodriguez*

91. Mr. Luis Armando Santana Rodriguez was recruited in 2020 in Mexico to work for East Coast Hemp by Chris Simpson.

92. Mr. Simpson originally promised Mr. Santana Rodriguez $12.67 per hour. He was paid $12.72 per hour.

93. Based on that promise, Mr. Santana Rodriguez obtained an H-2A visa, traveled from Mexico to Virginia, and began to work for Defendants.

94. Mr. Santana Rodriguez worked for Defendants in King George, Virginia under an H-2A visa for approximately three (3) months in 2020.

95. Mr. Santana Rodriguez typically worked between approximately fifty-four (54) and seventy-one (71) to hours per week, excluding the first and last weeks.  Mr. Santana Rodriguez would return to spray in the evenings.

96. Mr. Santana Rodriguez was not paid for all of his hours.

97. Mr. Santana Rodriguez paid approximately $580 for his inbound trip from Mexico to Virginia and for his food and hotels during the journey. Defendants reimbursed Mr. Santana Rodriguez for only $200 of these expenses.

98. Mr. Santana Rodriguez paid $480 for his outbound trip from Virginia to Mexico and for his food and hotels during the journey. Defendants did not reimburse Mr. Santana Rodriguez for any part of these expenses.

99. Chris Simpson and East Coast Hemp's failure to pay wages to Mr. Santana Rodriguez that they were legally and contractually obligated to pay and their failure to abide by H-2A regulations caused Mr. Santana Rodriguez monetary injury.

## CAUSES OF ACTION

## COUNT I:  Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*

100. Plaintiffs reallege and incorporate by reference each and every allegation set forth in this Complaint as if fully set forth herein.

101. Pursuant to 29 U.S.C. § 216(b), Plaintiffs have consented in writing to be parties in this FLSA action.  Their written consents are attached to this Complaint. *See* Exhibit A.

102. At all times relevant to this action:

    a.   Plaintiffs were employees of Defendants within the meaning of 29 U.S.C. § 203(e)(1);

    b.   Defendants were the joint employers of Plaintiffs within the meaning of 29 U.S.C. § 203(d);

    c.   Defendants jointly employed Plaintiffs within the meaning of 29 U.S.C. § 203(g); and

    d.   Plaintiffs were engaged in commerce or the production of goods for commerce, and/or were employed by Defendants in an enterprise engaged in commerce or the production of goods for commerce.

103. Defendants failed to reimburse Plaintiffs for their out-bound travel expenses, as required by 20 C.F.R. § 655.122(h).

104. This caused Plaintiffs' paychecks in their last week of work to amount to below $7.25 per hour.

105. Defendants also failed to reimburse Plaintiffs in full for their in-bound travel expenses, as required by 20 C.F.R. § 655.122(h), by paying only $200 of the $580 paid by each Plaintiff.

106. This caused Plaintiffs' first paychecks to amount to below $7.25 per hour.

107. Defendants further regularly paid Plaintiffs late, paying them late in nearly every pay period.

108. Defendants violated the FLSA's minimum-wage provision, 29 U.S.C. § 206(a), by failing to pay Plaintiffs at least $7.25 for every hour of work in each workweek and on time, to Plaintiff's harm, and are liable to Plaintiffs in damages.

109. By failing to pay Plaintiffs their lawful minimum wage for every compensable hour of labor, as set forth above, Defendants violated the minimum wage provisions of the FLSA, 29 U.S.C. § 206, to Plaintiffs' injury, and are liable to them in damages in the amount of their unpaid minimum wages, plus an additional amount in liquidated damages, including for the hours paid late, the costs of suit, and reasonable attorneys' fees pursuant to 29 U.S.C. § 216(b).

## COUNT II: Breach of Contract under Virginia Common Law, *against Defendant East Coast Hemp Company, LLC*

110. Plaintiffs reallege and incorporate by reference each and every allegation in this Complaint as if fully set forth herein.

111. An employment contract existed between each Plaintiff and East Coast Hemp by virtue of East Coast Hemp offering employment to Plaintiffs and Plaintiffs accepting that offer and beginning work for East Coast Hemp.

112. The terms and conditions provided in the temporary labor certification, its accompanying attestations, and the laws and regulations applicable to the H-2A program (including 20 C.F.R. § 655.122) constituted terms of the contracts between Plaintiffs and Coast Hemp.

113. Alternatively, terms and conditions provided in the temporary labor certification, its accompanying attestations, and the laws and regulations applicable to the H-2A program constituted the governing law at the time an employment contract was otherwise formed and thus became terms of the contract.

114. East Coast Hemp made a promise to offer Plaintiffs at least three-fourths of the work, pursuant to 20 C.F.R. § 655.122(i).

115. East Coast Hemp also promised, as required by law, that "[i]f during the total work contract period the employer affords the U.S. or H-2A worker less employment than that required

under this paragraph, the employer must pay such worker the amount the worker would have earned had the worker, in fact, worked for the guaranteed number of days." 20 C.F.R. § 655.122(i).

116. Plaintiffs accepted East Coast Hemp's promises by coming to the United States and performing work.

117. Plaintiffs satisfactorily performed all employment duties and responsibilities required of them under the employment contracts with East Coast Hemp.

118. East Coast Hemp breached the employment contracts with Plaintiffs by failing to offer the Plaintiffs employment for three-fourths of the workdays during the specified contractual period and failing to pay the Plaintiffs the amount they would have earned had they worked for the guaranteed number of days.

119. East Coast Hemp also breached the employment contracts with Plaintiffs by failing to abide by the applicable H-2A regulations, including the requirements that the employer (1) comply with applicable federal, state, and local employment-related laws, (2) comply with the requirements of the FLSA, (3) keep accurate and adequate records with respect to the workers' earnings, and (4) pay for transportation and subsistence costs incurred in coming to the United States to the job site and in returning to their home country from the job site. *See* 20 C.F.R. §§ 655.122.

120. Namely, East Coast Hemp did not pay for any transportation or subsistence costs from the job site back to Mexico and did not fully cover the transportation or subsistence costs in the journey to the job site, breaches that also caused East Coast Hemp to pay Plaintiffs less than required by law for their last paychecks. Additionally, given that Plaintiffs were not paid

for all of their hours, upon information and belief, East Coast Hemp did not keep accurate and adequate earnings records.

121. East Coast Hemp's breaches of the contract caused Plaintiffs substantial injuries, including lost wages and money paid improperly for transportation, for which Plaintiffs are entitled to actual and consequential damages, six percent (6%) prejudgment interest from the date of the breach, and the costs of this lawsuit.

## COUNT III: Unjust Enrichment Under Virginia Common Law *against Defendant East Coast Hemp Company, LLC*

122. Plaintiffs re-allege and incorporate by reference each and every allegation in this Complaint as if fully set forth herein.

123. Plaintiffs conferred a benefit upon Defendant East Coast Hemp by laboring between at least fifty-four (54) and seventy-two-point-twenty-five (72.25) hours.

124. Defendant East Coast Hemp did not pay Plaintiffs for all of their hours.

125. Defendant East Coast Hemp was unjustly enriched by all wages retained from Plaintiffs for each unpaid hour.

126. Defendant East Coast Hemp knew that Plaintiffs conferred these benefits to Defendant East Coast Hemp.

127. Defendant East Coast Hemp accepted these benefits (namely the value of Plaintiffs' labor) under circumstances that render it inequitable for Defendant East Coast Hemp to retain the benefits without paying for their value.

128. Defendant East Coast Hemp did not pay the amounts promised to Plaintiffs or required by law. Defendant East Coast Hemp has therefore been unjustly enriched.

129. Plaintiffs have been injured and damaged as a result of Defendant East Coast Hemp's failure to fully and fairly compensate Plaintiffs for the above-mentioned services.

130. It is inequitable for Defendant East Coast Hemp to retain the benefits of Plaintiffs' services without fully compensating them for the value of their services.

131. As a result, Plaintiffs are entitled to the reasonable value of services performed for which they have not been compensated, six percent (6%) prejudgment interest from the date of the breach, and the costs of this lawsuit.

## COUNT IV: Quantum Meruit Under Virginia Common Law (in the alternative to unjust enrichment) *against Defendant East Coast Hemp Company, LLC*

132. Plaintiffs re-allege and incorporate by reference each and every allegation in this Complaint as if fully set forth herein.

133. Plaintiffs conferred a benefit upon Defendant East Coast Hemp by laboring between fifty-four (54) and seventy-two-point-twenty-five (72.25) hours, and sometimes more, per week, despite only being paid some of those hours.

134. Defendant East Coast Hemp knowingly and voluntarily accepted Plaintiffs' extra work, which was of material benefit to Defendants.

135. The job contract only provided for work for forty-nine (49) hours of work per week.

136. Defendant East Coast Hemp did not pay Plaintiffs for all of their extra hours.

137. Having paid Plaintiffs for only some of their extra work, Defendant East Coast Hemp did not pay them fair value for their work.

138. Plaintiffs have been injured and damaged as a result of Defendant East Coast Hemp's failure to fully and fairly compensate Plaintiffs for the above-mentioned services.

139. It is inequitable for Defendant East Coast Hemp to retain the benefits of Plaintiffs' services without fully compensating them for the value of their services.

140. As a result, Plaintiffs are entitled to the reasonable value of services performed for which they have not been compensated, six percent (6%) prejudgment interest from the date of the breach, and the costs of this lawsuit.

## REQUESTED RELIEF

Wherefore, Plaintiffs respectfully request that this court provide the following relief:

141. Under Count I, an award of each Plaintiff's actual damages under the FLSA, pursuant to 29 U.S.C. § 206 in the amount of all unpaid minimum wages, jointly and severally against both Defendants;

142. Under Count I, an additional equal amount to each Plaintiff as liquidated damages, pursuant to 29 U.S.C. § 216(b), jointly and severally against both Defendants;

143. Under Count I, an award of Plaintiff's costs and reasonable attorney's fees, as appropriate under the FLSA, 29 U.S.C. § 216(b), jointly and severally against both Defendants;

144. Under Count II, an award of each Plaintiff's unpaid promised wages including the three-fourth's guarantee in an amount appropriate under H-2A regulations, 20 C.F.R. §§ 655.122, against Defendant East Coast Hemp, plus 6% interest payments from the date of failure to pay the wages, to the extent that such relief would not reduce the amount otherwise owed Plaintiffs;

145. In the alternative to Count I, under Count II, travel expenses to and from Virginia, 20 C.F.R. §§ 655.122, against Defendant East Coast Hemp, to the extent that such relief would not reduce the amount otherwise owed Plaintiffs

146. Under Count III, an award equal to the amount Defendants were unjustly enriched for Plaintiffs' unpaid work, in an amount appropriate to the proof at trial, against Defendant

East Coast Hemp Company, LLC, to the extent that such relief would not reduce the amount otherwise owed Plaintiffs;

147. Under Count IV, in the alternative to Count III, an award of each Plaintiff's unpaid work, in an amount appropriate to the proof at trial, against Defendant East Coast Hemp Company, LLC, to the extent such relief would not reduce the amount otherwise owed Plaintiffs;

148. Under Counts II-IV, Plaintiffs' costs and six percent (6%) pre-judgment from the date of the breach and post-judgment interest as permitted by law; and

149. Such other and further relief as this court deems necessary and proper.

**Plaintiffs demand a trial by jury.**

Respectfully submitted this 16th day of September 2021,

LILIANA CORONA GUTIERREZ, GERMAN CORTEZ HERNANDEZ, OSCAR CORONA VALENCIA, YAIR LORTIA MACEDONIO, and LUIS SANTANA RODRIGUEZ

By: _/s/Rachel C. McFarland_____
Rachel C. McFarland, VSB #89391
LEGAL AID JUSTICE CENTER
1000 Preston Avenue, Suite A
Charlottesville, VA 22903
Tel: (434) 977-0553
Fax: (434) 977-0558
Email: rmcfarland@justice4all.org

Jason B. Yarashes, VSB #90211
LEGAL AID JUSTICE CENTER
626 East Broad Street, Suite 200
Richmond, VA 23219
Tel: (503) 430-4123
Fax:  (434) 977-0558
Email: jasony@justice4all.org

Kristin F. Donovan, VSB #92207
LEGAL AID JUSTICE CENTER

6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Tel: (571) 620-5261
Fax : Fax: (703) 778-3454
Email: kristin@justice4all.org


ATTORNEYS FOR PLAINTIFFS